IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **JORGE QUINONEZ JR.,** § | |
| Petitioner, § | |
| § | |
| v. § | |
| § | Civil Action No. 4:08-CV-417-Y |
| **NATHANIEL QUARTERMAN,** Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Jorge Quinonez Jr., TDCJ-ID #1408089, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Gatesville, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

Quinonez was charged by indictment with aggravated assault with a deadly weapon in cause

number 1018698R in the 372nd District Court of Tarrant Count, Texas. The indictment also included a habitual offender notice. (State Habeas R. at 7) On December 1, 2006, a jury found Quinonez guilty as charged, Quinonez pled guilty to the habitual offender allegation, and the trial court assessed his punishment at fifty years' confinement. (*Id.* at 68) On direct appeal, the Sixth Appellate District Court of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Quinonez's petition for discretionary review. *Quinonez v. Texas*, No. 06-07-00016-CR, slip op. (Tex. App.–Texarkana Sep. 12, 2007) (not designated for publication); *Quinonez v. Texas*, PDR No. 1515-07. Quinonez also filed a postconviction state habeas application challenging his conviction, which was denied by the Texas Court of Criminal Appeals on the findings of the trial court without a hearing. *Ex parte Quinonez*, Application No. WR-70,038-01, at cover.

At trial, Peter Thornfield, an architectural designer, testified that he occasionally employed Quinonez, a day laborer, to do demolition work in his construction business. (Reporter's R., vol. 3, at 38) On the day in question, Thornfield, Quinonez, and Preston Byerly, Quinonez's girlfriend's brother, were working at a job site in Tarrant County, Texas. (*Id.* at 45-50) Thornfield had approximately $2000 in cash with him to pay the advances and salaries of the day workers. (*Id.* at 46) Toward the end of the work day, Thornfield went into the garage to get a drink and was struck on the side of his head from behind with an object. (*Id.* at 54-56) Thornfield turned and saw Quinonez, three to four feet from him, drop a hammer and walk away. (*Id.* at 58, 128) Quinonez had struck Thornfield with the claw end of the hammer, and Thornfield's head was bleeding profusely. Thornfield drove to a nearby police station for help and identified Quinonez as the person who had hit him. Thornfield later required surgery to stop the bleeding. (*Id.* at 61-64) After getting

out of the hospital, Thornfield spoke with Byerly, who expressed fear of Quinonez. (*Id.* at 114-15) Byerly, who had enlisted in the military, was not available to testify at trial, however, in the state habeas proceedings, the state presented Byerly's written statement to police incriminating Quinonez.

D.  ISSUES

Quinonez raises three grounds for relief, in which he claims (1) he was denied effective assistance of counsel, (2) there was no forensic evidence secured at the scene or from the victim's clothing, and (3) he was denied appointment of counsel and a hearing in the state habeas proceedings. (Petition at 7)

E.  RULE 5 STATEMENT

Quarterman believes that Quinonez has sufficiently exhausted his state remedies on the claims presented as required by 28 U.S.C. § 2254(b)(1)(A). (Resp't Answer at 5)

F.  DISCUSSION

1.  Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*

3

*v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08. Further, the statute requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## 2. Ineffective Assistance of Counsel

Quinonez claims he received ineffective assistance of trial counsel because counsel did not move for a continuance to secure the attendance of Preston Byerly, the only key witness and possible suspect, at trial. A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable

4

application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

The same judge who presided over Quinonez's trial conducted the state habeas proceedings and entered findings refuting Quinonez's claim of ineffective assistance. An independent review of Quinonez's pleadings and the state court records does not reveal clear and convincing evidence that would rebut the presumption of correctness. The state habeas court found that defense counsel had used Byerly's absence as a means to establish reasonable doubt in the jurors' minds and that counsel's decision to do so was the result of reasonable trial strategy. The state court further found that Quinonez had failed to explain how Byerly's presence at trial would have changed the outcome of the proceeding. Quinonez provided no proof that Byerly would not have testified at trial that he saw Quinonez commit the offense or that Byerly's testimony would have benefitted, instead of harmed, his defense. (State Habeas R. at 35) Given the fact that Byerly gave a written statement to the police implicating Quinonez and that defense counsel was able to use Byerly's absence strategically in Quinonez's defense, the state court's adjudication of the claim is neither erroneous nor unreasonable. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

### 3. Sufficiency of the Evidence

Quinonez claims that he is actually innocent of the offense and that the evidence is legally insufficient to support the jury's verdict. In support of his claim, he points out that the police did not secure evidence from the scene, specifically, prints or a weapon, or blood splatter on Thornfield's clothing.

5

A claim of actual innocence is not a cognizable basis for federal habeas corpus relief. *Herrera v. Collins,* 506 U.S. 390, 400 (1993). Furthermore, under the *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), standard, applicable to sufficiency-of-the-evidence challenges in § 2254 actions, a federal court must only consider whether, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* The evidence adduced at trial, as well as all inferences reasonably drawn from it, is viewed in the light most favorable to the verdict. *See United States v. Sanchez,* 961 F.2d 1169, 1173 (5th Cir. 1992). To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Jackson,* 443 U.S. at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000). Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir. 1990). A federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts. *Marler v. Blackburn,* 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices must be resolved in favor of the jury's verdict. *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Applying state law, the appellate court analyzed the sufficiency of the evidence as follows:

> In reviewing the evidence on legal sufficiency grounds, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. In our review, we defer to the jury's determinations as to weight and credibility of the evidence.
>
> A person commits aggravated assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another." Assault becomes the offense of

aggravated assault when one of the following two circumstances is present: 1) the assault causes serious bodily injury, or 2) the actor uses or exhibits a deadly weapon. [A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."]

At trial, Thornfield consistently and repeatedly identified Quinonez as the individual who struck him. Anderson, one of the officers at the station to which Thornfield drove himself immediately after the injury, testified Thornfield reported that Quinonez had struck him. Approximately four days later, when Thornfield gave his written statement and first talked with Detective Bonnette, Thornfield also identified Quinonez as the individual who struck him. Based on this evidence, a rational jury could have found that Quinonez was the individual who struck Thornfield.

A person commits assault if he or she intentionally, knowingly, or recklessly causes bodily injury to another. Here, the record shows that Thornfield left Quinonez at the back of the house and went to the front and into the garage to an ice chest to get a drink. There is no evidence that any demolition was being done in that particular location that would call for Quinonez to follow Thornfield to the ice chest and start swinging a hammer above and behind Thornfield. From the evidence that Quinonez was left to do work at the back of the house, that Thornfield left that area to go to the front, and that Quinonez also came to the front where he struck Thornfield from behind, the jury could infer that Quinonez intentionally or knowingly struck Thornfield.

There is also ample evidence that Thornfield suffered bodily injury as a result of being struck behind his ear with the claw end of a hammer. Dr. Robert Sloane, Jr., testified that he performed surgery on Thornfield after he and other physicians were unable to stop the bleeding. He described Thornfield as "bleeding briskly." Dr. Sloane testified that Thornfield lost four to six units of blood and that, considering the human body has only approximately eight units of blood, this injury was "a serious bleeding episode" from which Thornfield could have bled to death. Dr. Sloane explained that Thornfield had suffered "an incision or a laceration through the muscle" causing multiple areas of arterial bleeding within the muscle that could not be stopped by simple suturing and that surgery was required to stop the bleeding. Thornfield testified he still has numbness in that area as a result of the injury.

At trial, Thornfield repeatedly and clearly testified Quinonez had a hammer in his hand when Thornfield turned around. Defense counsel pointed out that, in Thornfield's statement made four days after the event, Thornfield stated Quinonez had hit him with an object. Thornfield explained that he did so because he was attempting to describe the event broadly and briefly so his statement would fit on the one-page form he received from the police. Officer Anderson testified that, when Thornfield arrived at the police station following the injury, he did not know what

7

Quinonez had used to strike him. Additionally, Detective Bonnette testified that, when he talked to Thornfield four days later, Thornfield was not certain as to the object that was used, but that Thornfield did think it was a hammer.

Dr. Sloane testified that Thornfield's linear wound was consistent with the claw end of a hammer but agreed with defense counsel's suggestion that a knife could also have caused such an injury. Dr. Sloane also testified he recalled Thornfield having indicated to hospital staff he had been hit with a hammer. Thornfield testified consistently, and his medical records confirm that he did report to hospital staff that he had been struck with a hammer. Detective Bonnette testified that a hammer so used is capable of causing death or serious bodily injury.

There is some evidence that, immediately and shortly after the serious <u>injury to his head</u> and neck area, Thornfield may not have identified the object as a hammer. According to Thornfield's testimony, he is very clear that Quinonez was holding a hammer when he turned around. Reconciliation of conflicting testimony is within the exclusive province of the jury. Although there is evidence to the contrary, the evidence that Quinonez used a hammer to strike Thornfield and that a hammer used in this manner is capable of causing death or serious bodily injury is legally sufficient to enable the jury to conclude beyond a reasonable doubt that Quinonez used a deadly weapon during the assault against Thornfield.

We next address the specific contentions Quinonez presents in his brief to this Court. He argues that the lackluster police investigation of the event, the missing testimony of the only other witness, and the testimony from a defense witness that Thornfield had untruthful character "damaged the State's case." We address those assertions in turn.

We do not review the sufficiency of the police investigation; we review the evidence presented at trial. To the extent that the sufficiency of the police investigation is reflected by the sufficiency of the evidence, we have already concluded that the evidence is legally sufficient to support the jury's verdict.

In reviewing the legal sufficiency of the evidence, we do not consider what evidence the State could have or even should have presented. We review the evidence presented in a light most favorable to the verdict to determine whether, from *that* evidence, a rational jury could have found the elements of the charged offense beyond a reasonable doubt. Absence of a potential witness will not render otherwise sufficient evidence insufficient.

Quinonez points to testimony from Thornfield's neighbor and former client, Linda Hemingway, as support for his contention that the evidence was legally insufficient. Hemingway testified that Thornfield had lied to her on many occasions and that he does not have a truthful character.

8

> We may not substantially intrude on the jury's role as sole judge of the weight and credibility given to witness testimony. The jury is free to accept or reject any or all of the evidence presented by either side. Under our standard of review, one witness' testimony concerning only the complainant's untruthful character will not, in itself, render the evidence legally insufficient. We defer to the jury's determination as to credibility.
>
> Viewing the evidence in a light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the jury's verdict. Thornfield's several statements to medical personnel in the course of treatment for the head injury and his several statements during in-court testimony that it was Quinonez who struck him with the hammer enabled the jury to find that it was Quinonez who committed aggravated assault with a deadly weapon.

*Quinonez*, No. 06-07-00016-CR, 2007 WL 2608833, at *2-4 (headings, subheadings, citations, and footnotes omitted).

An independent review of the evidence does not indicate that the evidence was insufficient to support the jury's verdict or that the state court's adjudication of the issue is contrary to, or involved an unreasonable application of, the *Jackson* standard or was based on an unreasonable determination of the facts in light of the evidence presented in the state court.

### 4. State Habeas Proceedings

Absent an evidentiary hearing, Quinonez claims the state habeas court made findings without a factual basis and failed to appoint counsel to represent him in the state habeas proceedings. He now seeks appointment of counsel and an evidentiary hearing in this federal habeas action. (Pet'r Reply at 1, 3-4) A petitioner serving a noncapital sentence, however, has no constitutional right to counsel for postconviction collateral attacks. The appointment of counsel is discretionary if the court determines that the interests of justice so require and is statutorily required if an evidentiary hearing is warranted. *See* RULES GOVERNING SECTION 2254 CASES 8(c); 18 U.S.C. § 3006A(a)(2)(B); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). A hearing is not required when

the record is complete or the petitioner raised only legal claims that can be resolved without the taking of additional evidence. *See Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir. 1989). Quinonez is not entitled to an evidentiary hearing because he has not shown that there is a factual dispute which, if it were resolved in his favor, would entitle him to relief. *See Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

## II.  RECOMMENDATION

Quinonez's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until June 10, 2009.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until June 10, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 20, 2009.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE